UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ARTHUR G.H. DEVORE III,

                    Plaintiff,                          **MEMORANDUM AND ORDER**
                                                        15-CV-6218 (PKC)
          -against-

NEIGHBORHOOD HOUSING SERVICES
OF JAMAICA INC. (NHSJ),

                    Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Arthur G.H. DeVore III ("Plaintiff"), proceeding *pro se*, brings this action

against his former employer, Defendant Neighborhood Housing Services of Jamaica Inc.

("Defendant" or "NHSJ"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act ("EPA"), 29 U.S.C. § 206 *et seq.*, and a state

law claim for breach of contract.[1]  Defendant now moves to dismiss the Complaint pursuant to

Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  The Court grants Defendant's motion in

part and denies it in part.  The Court dismisses Plaintiff's Title VII race-based disparate

treatment and hostile work environment claims.  Plaintiff's Title VII gender-based disparate

---

[1] At the pre-motion conference on Defendant's motion to dismiss, the Court determined
that, although not clearly stated in the Amended Complaint, Plaintiff was alleging that Defendant
breached an oral promise to promote him, but not on the basis of his race or gender.  *See* Pre-
Motion Conference Transcript ("PMC Tr."), March 24, 2016, at 6 (The Court: "Are you claiming
that you were not promoted because of race or gender discrimination?"  Mr. DeVore: "No."  The
Court: "Okay. Are you claiming that the Defendant breached an oral promise to you to promote
you?"  Mr. DeVore: "Yes.").  The Court construes this claim as a breach of contract claim under
state law.

Since neither party ordered a final version of the transcript of the Pre-Motion Conference,
the Court has relied on a draft version, which comports with the Court's recollection of the
proceedings.

treatment and retaliation claims, his EPA claim, and his state law breach of contract claim shall proceed.

## BACKGROUND

### I.  FACTUAL ALLEGATIONS[2]

After receiving a $2-million grant to assist people affected by Hurricane Sandy, Defendant hired Plaintiff, a black man, as a youth counselor for $45,000 per year. (Amended Complaint ("Am. Compl."), Dkt. 5, at ECF 3, 7–8.)[3]  Plaintiff worked for Defendant for a year and a half, until Defendant terminated him on September 30, 2015. (Am. Compl. at ECF 7.) While employed by Defendant, Plaintiff "realized that the grant was not being fulfilled properly and made numerous suggestions to management." (Am. Compl. at ECF 8.)

In May 2014, the NHSJ's leadership learned that its Youth Program Director, Thomas Ryer, had previously been incarcerated for violent offenses and thus was disqualified from continuing to serve as the program director. (Dkt. 18-2 at ECF 5–6.)  As a result, Plaintiff took over the "responsibility of directing the [youth] program." (*Id.* at 6.)  From April 2014 until his

_____

[2] The Court takes the allegations in the Amended Complaint as true, as it must on a motion to dismiss under FRCP 12. *See EEOC v. Port Auth. of New York & New Jersey,* 768 F.3d 247, 253 (2d Cir. 2014) ("[W]e accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.").  Additionally, the Court has considered facts in Plaintiff's opposition papers where those facts adds clarity to the originally pled facts. *See Vlad-Berindan v. MTA N.Y.C. Transit*, 14-CV-675, 2014 WL 6982929 at *3 n.1 (S.D.N.Y. Dec. 10, 2014) ("Although a court is typically confined when considering a motion to dismiss to the allegations contained within the four corners of [the] complaint, *pro se* pleadings are to be liberally construed.") (internal quotations and citations omitted); *id.* ("When analyzing a *pro se* pleading, a court may therefore consider factual allegations contained in the plaintiff's opposition papers and other court documents." (citing *Torrico v. Int'l Bus. Machs. Corp.*, 213 F. Supp. 2d 390, 399, n.4 (S.D.N.Y. 2002))).  Though Defendant argued in its reply that the additional facts asserted by Plaintiff in his opposition should be disregarded, Defendant had the opportunity to, and did, respond to these additional facts.  The Court, therefore, considers these additional facts as if alleged in Plaintiff's *pro se* complaint.

[3] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

termination on September 30, 2015, Plaintiff "did a great deal of extra work," including the work of eight other grant-funded positions that were required to run the program effectively, in addition to serving as the program's *de facto* director. (Am. Compl. at ECF 7–8; Dkt. 18-2 at ECF 7–8) On July 24, 2014, NHJS Executive Director Cathy Mickens asked Ryer why Plaintiff was doing Ryer's job and "all the work of the department". (Dkt. 18-2 at ECF 5–6.)[4]

Plaintiff was the only male employee performing director-level work in the Hurricane Sandy Program. (Am. Compl. at ECF 10–11.) The other directors at NHSJ were all women and receiving salaries of over $60,000. (*Id.*) Defendant paid "different/higher wages to women directors/managers", even though Plaintiff was "a male that was performing director/management work . . . ." (Dkt. 18-2 at ECF 5.)

Frustrated that he was doing the work of a director and others, despite receiving only the salary of a youth counselor, Plaintiff applied for other jobs, and received an offer of a director-level job overseeing youth programs at another agency, which would have paid $62,000. (Am. Compl. at ECF 8.) Around October 20, 2014, Defendant promised Plaintiff that he would be promoted to director after the current director (presumably Ryer) was let go, and promised Plaintiff a salary of approximately $65,000. (*Id.*) Although Plaintiff told Defendant about his other offer, Defendant persuaded Plaintiff to stay with a promise of a director position and salary. (*Id.*) On September 28, 2015, Lori Miller, who had taken over as NHSJ's Executive Director, thanked Plaintiff for "carrying the department" and "acknowledged all the work [he] did as a director to help fulfill the grant." (Dkt. 18-2 at ECF 6, 9.)

---

[4] Although Plaintiff's papers are somewhat confusing on this point, the Court infers that after Plaintiff took over Ryer's duties, Ryer continued to hold the title of Youth Program Director.

Between May 2014 and March 3, 2015, Ryer,[5] a black man (who appeared to still hold the title of Youth Program Director), made multiple "sexist" and "racial slurs" against white people and women, including "repeated comments about women being inferior," and women's "inability to effectively run a business".  (Am. Compl. at ECF 8, 10; Dkt. 18-2 at ECF 12.)[6] Plaintiff and other staff members complained numerous times to management about Ryer's comments, beginning on May 6, 2014.  (Am. Compl. at ECF 8.)  Plaintiff found Ryer's comments to be "embarrassing and inappropriate."  (*Id*.)  Plaintiff shared his concerns about these discriminatory comments with Miller, who was then the interim Executive Director.  (*Id.* at ECF 9.)  He also made a complaint about these comments to the New York State Department of Human Rights ("NYSDHR") on February 26, 2015.  (Am. Compl. at ECF 4.)

---

[5] Although Plaintiff does not explicitly name Ryer as the one who made the racist and sexist slurs, the Court infers that Plaintiff was referring to Ryer when he referenced the "black, male Youth Program Director" who made the comments, in light of the fact that Plaintiff stated that Ryer was the Youth Program Director (Dkt. 18-2 at ECF 5–6) and that Plaintiff refers to Mickens as allowing Ryer to "get away with all his wrong doings."  (Am. Compl. at ECF 10–11; Dkt. 18-2 at ECF 12.)  However, if there is another youth program director who made these comments, it does not change the Court's analysis.

[6] Ryer's other alleged comments included the following:

"I can't see how this organization been around for 40 years and it ran [sic] by women."

"They are fucking up the grant cause [sic] women can't emotionally handle business like men."

"She must be on her period today, Patricia keep calling me asking for these reports."

"The white man try to hold us blacks back.  But President Obama ain't playing that shit."

"These women are going to run this organization into the ground, you should have took that job at YMCA; these women don't communicate. They been around 40 years, to [sic] busy mad cause [sic] one don't have a high school diploma, female pettiness."  (Am. Compl. at ECF 9.)

Defendant took multiple adverse employment actions against Plaintiff—who had "always received stellar performance evaluations"—for complaining about this discrimination, including: (1) failing to promote him to the director position for which he was already doing the work; (2) retaliatory write-ups for infractions that had not happened, such as looking at his smart-phone during meetings when Plaintiff had actually been taking notes on his smart-phone; (3) failing to pay Plaintiff at the $65,000 rate that he had been promised; (4) defaming Plaintiff's work ethic and character in his employment evaluation; (5) attempting to deny Plaintiff his travel payments for work-related travel; and (6) terminating Plaintiff's employment on September 30, 2015. (Am. Compl. at ECF 9–10.) Plaintiff asserts that his firing was "ostensibly because of a lack of funding but in fact [was] for discriminatory and retaliatory reasons." (*Id.* at ECF 10.)

## II. PROCEDURAL HISTORY

Plaintiff filed a charge with the NYSDHR and EEOC on February 26, 2015. (Am. Compl. at ECF 4.)[7] Plaintiff received a no-probable-cause determination from the NYSDHR on October 7, 2015,[8] and a Right to Sue letter from the EEOC on October 14, 2015. (Am. Compl. at ECF 5, 7.) Plaintiff also alleged that he "submitted multiple complaints to NHSJ . . . about adverse employment action in the form of discrimination, sexual stereotyping, bullying, harassment, and retaliation" on 7/24/2014, 11/10/2014, 11/24/2014, 12/19/2014, 12/24/2014, 1/6/2015, 2/5/2015, 8/17/2015, and 8/18/2015, and that he submitted an additional complaint to the NYSDHR/EEOC after his termination on 11/04/2015.[9] (Dkt. 18-2 at ECF 10.)

---

[7] Defendant disputes the date of this NYSDHR filing, stating that it was March 17, 2015. (Dkt. 18-1 at ECF 8.)

[8] Defendant received the NYSDHR finding on or about August 24, 2015. (Dkt. 18-2 at ECF 14.)

Plaintiff timely filed this action on October 28, 2015. (Dkt. 1.) On November 17, 2015, the Court issued an order stating that Plaintiff's complaint failed to state a claim under Title VII or the Equal Pay Act, because the entirety of Plaintiff's claim was that he "filed a complaint with New York State Division of Human Rights charging NHSJ with unlawful discriminatory practice [sic] relating to employment because of opposed discrimination/retaliation, sex, + Equal Pay Act," and Plaintiff had not attached the referenced findings. (Dkt. 4 at ECF 1–2 (quoting Dkt. 1 at ECF 4).) The Court granted Plaintiff thirty (30) days to amend. (Dkt. 4 at ECF 5.) Plaintiff filed his Amended Complaint on December 11, 2015. (Dkt. 5.)

On May 9, 2016, Defendant moved to dismiss the Amended Complaint under FRCP 12(b)(6).

## STANDARD OF REVIEW

At the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Nevertheless, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. The pleading standard is necessarily "less stringent" in the context of *pro se* litigants, whose complaints the Court is required to construe liberally and interpret as raising the strongest arguments they suggest. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008). This obligation "applies with particular force" when a *pro se* plaintiff alleges that a defendant

---

[9] Defendant states that this second NYSDHR complaint was filed "on or about September 30, 2015." (Dkt. 18-1, at ECF 11.)

has "violated her civil rights." *Crawley v. Macy's Retail Holdings, Inc.*, 15-CV-2228, 2016 WL 6993777, at *4 (S.D.N.Y. Nov. 29, 2016).

## DISCUSSION

### I. TITLE VII CLAIMS

#### A. *McDonald Douglas* Framework

Employment discrimination claims pursuant to Title VII follow the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015) (discussing this framework). At the pleading stage, "a plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas prima facie* case, but the facts alleged must give 'plausible support to the reduced requirements' of the *prima facie* case." *Alleyne v. NAACP Legal Defense and Educational Fund, Inc.*, 14-CV-6675, 2015 WL 6869731, at *2 (E.D.N.Y. Nov. 6, 2015) (quoting *Littlejohn*, 795 F.3d at 311)).

At this initial stage, "the prima facie requirements are relaxed." *Littlejohn*, 795 F.3d at 307. The plaintiff can establish a *prima facie* case if she can show "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Id.*

If a plaintiff succeeds in establishing a *prima facie* case, then there is a "temporary presumption of discriminatory motivation, shifting the burden of production to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff." *Id.* (internal quotations and citations omitted). At the second stage, "once the employer presents evidence of its justification for the adverse action, joining issue on plaintiff's claim of discriminatory motivation, the presumption 'drops out of the picture' and the

*McDonnell Douglas* framework 'is no longer relevant.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)).

After a defendant supplies such a justification, at the third stage, "the plaintiff must demonstrate that the proffered reason was not the true reason (or, in any event, not the sole reason) for the employment decision, which merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against her." *Id.* at 307–08.

For a plaintiff to survive a motion to dismiss on a Title VII claim in the absence of direct evidence of discrimination, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (explaining that the facts in the complaint must "provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" (quoting *Littlejohn*, 795 F.3d at 311, *8)). Courts making the plausibility determination should do so "'mindful of the elusive nature of intentional discrimination" and the frequency by which plaintiffs must "rely on bits and pieces of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination." *Vega*, 801 F.3d at 86–87 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, n.8 (1981) and *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998)). The pleading requirements in a Title VII action are "very lenient, even de minimis." *Ming v. Mitchell*, 972 F. Supp. 2d 426, 428 (E.D.N.Y. 2013) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)).

Title VII prohibits two main forms of discrimination—disparate treatment, *i.e.*, "quid pro quo" discrimination, and discrimination that leads to a hostile work environment. *Alfano v.*

*Costello*, 294 F.3d 365, 373 (2d Cir. 2002).  Plaintiff has alleged both forms of discrimination in his Amended Complaint.

### B.     Plaintiff's Disparate Treatment Claims Based on Race and Gender

The Court grants Defendant's motion to dismiss Plaintiff's Title VII race-based disparate treatment claim, on the basis that it was not exhausted and Plaintiff has not plausibly alleged facts supporting an inference of race discrimination, but denies the motion as to his gender-based disparate treatment claim.

#### 1.   Exhaustion of Disparate Treatment Claims

As a preliminary matter, Defendant argues that Plaintiff has failed to exhaust his administrative remedies for his Title VII claims.  "Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency [*e.g.*, the NYSDHR]."    *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006).  Furthermore, the claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct, and must receive a "Notice of Right to Sue" letter from the EEOC.  *Id.*  Claims not raised in an EEOC complaint "may be brought in federal court if they are 'reasonably related' to the claim filed with the agency."  *Id.*; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (articulating the same standard).  A claim is considered reasonably related when it "(1) is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) would constitute retaliation for filing a timely EEOC charge; and (3) constitutes further incidents of discrimination perpetuated in precisely the same manner as alleged in the EEOC charge." *Hansen v. Danish Tourist Bd.*, 147 F. Supp.2d 142, 151 (E.D.N.Y. 2001) (citing *Butts v. City of N.Y. Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)); *see Deravin*, 335

F.3d at 201.  The focus is on the factual allegations made in the EEOC charge, describing the discriminatory conduct.  *Williams*, 458 F.3d at 70.  "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'"  *Id.* (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)).

<span style="display:inline-block">a)</span>    <u>Plaintiff Failed to Exhaust His Race-Based Disparate Treatment<br>Claim</u>

In Plaintiff's NYSDHR Complaint, filed in either February or March 2015, he alleged sex and age discrimination and wrote in "sexual stereotyping", sexual harassment and retaliation "for filing an HR complaint."  (Dkt. 18-1, at ECF 11; Dkt. 18-2, at ECF 4.)[10]  As acts of discrimination, Plaintiff alleged that Defendant harassed and intimidated him, denied him training, gave him disciplinary notices, or negative performance evaluations, and paid him unjust wages.  (Dkt. 18-1, at ECF 11.)  The initial NYSDHR complaint also stated that Plaintiff was alleging retaliation for opposing discrimination based on sex.  (*Id.*)  The second NYSDHR Complaint, filed on September 30, 2015 or November 4, 2015, alleged retaliation for filing the prior NYSDHR complaint.  (*Id.*)  In neither complaint did Plaintiff check off the box for race, color, or ethnicity or mention anything about race-based discrimination.  (*Id.* at ECF 11–12.)

The Court agrees with Defendant that Plaintiff failed to exhaust any claim of racial discrimination, as his NYSDHR complaint undisputedly did not mention any type of racial discrimination, and referenced only, and repeatedly, gender-based allegations, *e.g.*, "sexual stereotyping", "harassment", and gender-based pay differences.  (Dkt. 18-1, at ECF 11; Dkt. 18-

---

[10] Although Plaintiff has attached his EEOC right to sue letter, neither party has submitted Plaintiff's NYSDHR Complaints, so the Court is unable to evaluate those complaints directly.  However, the parties do not dispute the main substance of the NYSDHR Complaints.  The Court relies on the parties' representations of what the NYSDHR Complaints contained, construing those representations liberally in Plaintiff's favor.  (Dkt. 18-1, at ECF 11; Dkt. 18-2, at ECF 4.)

2, at ECF 4.) An administrative complaint alleging sex and age discrimination does not give the NYSDHR "adequate notice to investigate" racial discrimination. *Williams*, 458 F.3d at 70; *see also Hawkins v. Wegmans Food Mkt., Inc.*, 224 F. App'x 104, 105 (2d Cir. 2007) (summary order) ("As Hawkins's conclusory allegations about his termination on the basis of his gender and learning disability would not alert the EEOC to investigate charges of race and age discrimination as well, it cannot be said that the allegations of race and age discrimination are reasonably related to the claims in Hawkins's EEOC filing . . . ."); *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 353 (E.D.N.Y. 2013) (barring plaintiff's claims of race, ethnicity, and national origin discrimination when plaintiff only alleged disability discrimination in her NYSDHR Complaint); *Morales v. City of N.Y. Dep't of Juvenile Justice*, 10-Civ.-829, 2012 WL 180879, at *3–4 (S.D.N.Y. Jan. 23, 2012) (dismissing claims of gender, age, and disability discrimination after plaintiff only checked the boxes for race, national origin, and retaliation in his NYSDHR complaint). Unlike race and national origin, which may in some contexts be reasonably related, *see Deravin*, 335 F.3d at 201, a claim of sex discrimination does not alert the EEOC to investigate a claim of race discrimination.

The Court, therefore, finds that Plaintiff failed to exhaust any disparate treatment claim based on race and that claim, to extent Plaintiff is alleging it, is dismissed.

> b) <u>Plaintiff Has Exhausted His Gender-Based Disparate Treatment Claim</u>

The Court reaches a different conclusion with respect to Plaintiff's claim of gender-based disparate treatment, and finds that Plaintiff has exhausted that claim.[11] The Court recognizes that at least part of Plaintiff's gender discrimination claim is improperly based on alleged

---

[11] Again, the Court must rely on the parties' representations of what the NYSDHR complaints alleged. *See supra* note 10.

discrimination directed at his *female* co-workers, and not based on *his* gender. (*See* Am. Compl., at ECF 3 (Plaintiff checked box for gender discrimination on the cover sheet to his Amended Complaint and wrote, "I complained about the treatment of women.").) However, because Plaintiff has consistently alleged in both his NYSDHR complaint and his Amended Complaint that he was denied equal pay on the basis of his gender, the Court finds that he has exhausted a gender-based *disparate treatment* claim.[12] Plaintiff, however, will ultimately have to put forth more evidence than the mere gender difference between himself and the higher paid directors/managers to prove his disparate treatment claim. *See Vega*, 801 F.3d at 85 (explaining this requirement); *Szewczyk v. City of N.Y.*, 15-CV-918, 2016 WL 3920216, at *7 (E.D.N.Y. July 14, 2016) (finding no inference of gender discrimination when plaintiff alleged that a less qualified man was hired for the position in question, but also stated that they hired another woman for the position plaintiff sought); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (dismissing claim of gender discrimination because plaintiff "fail[ed] to allege facts sufficient to 'connect the dots between the alleged adverse actions and h[er] membership in a protected class'" (quoting *Acosta v. City of New York*, 11-CV-856, 2012 WL 1506954, at *4 (S.D.N.Y. April 26, 2012)).

2. Sufficiency of Plaintiff's Disparate Treatment Claims

    a) Plaintiff Fails to Sufficiently Allege Disparate Treatment Based on Race

---

[12] Importantly, based on Plaintiff's unequivocal statements at the pre-motion conference that he is not claiming that Defendant's decision not to promote him was based on his race or gender (PMC Tr., at 6), he will not be permitted to rely on this alleged adverse action to establish his disparate treatment claim. Nor will Plaintiff be permitted to argue that his termination was motivated by gender bias, given that Plaintiff only alleged in his NYSDR complaint and the Amended Complaint that his termination was the result of retaliation for complaining about inappropriate treatment and comments as to himself and others, and not because of gender bias.

As previously discussed, it is unclear whether Plaintiff is making a disparate treatment claim based on race in this case. However, to the extent that he is, in addition to being barred for failure to exhaust, this claim fails substantively.[13] Although Plaintiff checked the box for race discrimination in the cover sheet of his Amended Complaint, (Am. Compl. at ECF 3), the only fact he alleges pertaining to race is Ryers's "anti-white" comment that, "[t]he white man try to hold us blacks back[,] [b]ut President Obama ain't playing that shit." (*Id.* at ECF 9.) Plaintiff has not alleged anywhere else in the Amended Complaint or in his opposition to Defendant's motion to dismiss that he experienced an adverse action based on *his* race. *See Vega*, 801 F.3d at 85 (explaining that "an action is because of a plaintiff's race, color, religion, sex, or national origin [as required in a Title VII discrimination claim] where it was a substantial or motivating factor contributing to the employer's decision to take the action" (internal quotation marks omitted)); *Szewczyk*, 2016 WL 3920216, at *7 (framing the issue as whether plaintiff had alleged "sufficient facts to support a plausible inference that *Plaintiff's* gender was at least a motivating factor in Defendants' decision not to hire her) (emphasis added). Therefore Plaintiff has not plausibly alleged facts giving rise to an inference of discrimination, or provided "minimal support for the proposition that [his] employer was motivated by discriminatory intent." *Vega*, 801 F.3d at 85 (quoting *Littlejohn*, 795 F.3d at 311). Plaintiff thus fails to make a *prima facie* case of Title VII disparate treatment based on race.

b)    <u>Plaintiff has Sufficiently Alleged a Disparate Treatment Claim Based on Gender</u>

For the reasons previously discussed in the context of exhaustion, the Court finds that Plaintiff has sufficiently pled a disparate treatment claim on the basis of gender. Plaintiff alleges

---

[13] At the March 24, 2016 pre-motion conference, Plaintiff agreed that he had not been subjected to discrimination based on his race. PMC Tr., at 19.

that he was denied the same level of pay as managers and program directors, all of whom were female, despite the fact that Plaintiff had the same, or even greater, responsibilities as these directors/managers did, and was performing the same work, if not more, than they were. This allegation is sufficient at this stage to meet Plaintiff's minimal burden of pleading a *prima facie* case of disparate treatment on the basis of gender. *See Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 533 (S.D.N.Y. 2011) (stating that Plaintiff's "*prima facie* showing of an EPA violation also establishes, as a matter of law, a *prima facie* case of gender-based pay discrimination in violation of Title VII" (citing 29 C.F.R. § 1620.27(a)); *see also Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 537 (S.D.N.Y. 2002) (explaining, in the context of a Title VII disparate treatment claim based on race, that "to establish a prima facie case, it is generally enough to show that a similarly situated employee who is not part of a protected group received better treatment").

### C. Plaintiff's Hostile Work Environment Claim

Defendant argues that Plaintiff's hostile work environment claim should be dismissed because it fails to allege that the work environment was hostile to him, as opposed to others, on the basis of race or gender. (Dkt. 18-1, at ECF 17.) The Court agrees.[14]

Title VII prohibits an employer from "discriminating in 'compensation, terms, conditions, or privileges of employment, because of [an] individual's race, color, religion, sex or national origin.'" *Littlejohn*, 795 F.3d at 320 (quoting 42 U.S.C. S 2000e-2(a)(1)). Requiring people to "work in a discriminatorily hostile or abusive environment" thus violates Title VII. *Littlejohn*, 795 F.3d at 320. To establish a hostile work environment claim under Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule,

---

[14] Because the Court finds that Plaintiff has failed to state a hostile work environment claim, it does not address the exhaustion issue with respect to this claim.

and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 320–321.

To prevail on a hostile work environment claim, a plaintiff must ultimately prove not only that the workplace environment is objectively and subjectively hostile or abusive, but also that an employer's conduct has created such an environment "because of plaintiff's sex [or other protected characteristic]." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). "It is axiomatic that mistreatment at work, . . . through subjection to a hostile environment . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998)). The "ultimate issue" is "the reasons for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace." *Id.* (emphasis in original). *See also Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001) (discussing the "prohibited causal factor" requirement of a Title VII hostile work environment claim, which requires that the conduct create a hostile or abusive environment *because* of a plaintiff's protected characteristic).[15]

Plaintiff's hostile work environment claim fails because he has not alleged an environment that was hostile because of *his* protected characteristics. In his complaint, he

---

[15] To the extent the EEOC's policy guidance suggests that men should be able to bring hostile work environment claims if they are offended by pervasive messages that women are viewed as "sexual playthings" by managers, EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism, N-915.048 (Jan. 12, 1990), the Court declines to follow that non-binding guidance. *See Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 515–16 (S.D.N.Y. 2010) (rejecting EEOC guidance and explaining that "Second Circuit has never endorsed such a position and this Court sees no sound reason to"). Furthermore, the Court finds *Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000), *superseded by statute on other grounds*, to be distinguishable. Although the Court stated that "offensive remarks or behavior [do not need to] be directed at individuals who are members of the plaintiff's own protected class" to support a hostile work environment claim, *Cruz* pointed to remarks "targeting members of other minorities" as potentially contributing to "the overall hostility of the working environment for a minority employee." *Id.* at 570. *Cruz* did not suggest that a man could bring a gender-based hostile work environment claim alleging comments targeting women.

discussed having to listen to "racial and sexist slurs" by the black, male Youth Program Director, Ryer, against white people and women. (Am. Compl, at ECF 8–9.) At the pre-motion conference, Plaintiff confirmed that the hostile work environment about which he was complaining "was hostile to [his] coworkers and colleagues who are women and white" and that he "was subjected to it because [he] was there . . . ." PMC Tr., at 18–19. This allegation is insufficient to support a hostile work environment claim. *See Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502 (S.D.N.Y. 2010) (granting motion to dismiss on hostile work environment claim because "[a]n examination of [plaintiff's] allegations reveals that he does not contend that he was disparaged or badly treated or subjected to an unpleasant work atmosphere in any way because he is a man[, but] [r]ather . . . that [defendants] advanced a demeaning view of women in the workplace, which [plaintiff] was exposed to and found 'objectionable'. . . and which denied 'him the opportunity to work in an employment setting free of unlawful harassment"); *see also Opoku v. Brega*, 15-CV-2213, 2016 WL 5720807, at *14 (S.D.N.Y. Sept. 30, 2016) (dismissing hostile work environment claim in part because "none of the incidents alleged by Plaintiff explicitly invoked his race or national origin" and Plaintiff had not "establish[ed] a nexus between the incidents underlying his hostile workplace claim and his race"); *Rivera v. Brooklyn Hosp. Med. Ctr.*, 28 F. Supp. 3d 159, 163 (E.D.N.Y. 2014) (dismissing plaintiff's hostile work environment claim based on ethnicity when plaintiff alleged only one instance in which a co-worker referred to his ethnicity).[16]

---

[16] The Court further questions whether Plaintiff would have standing to assert a hostile work environment claim on the ground that the workplace was hostile to women and white people. In *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 186 (2d Cir. 2001), the Second Circuit noted that the Fourth, Seventh, and Ninth Circuits have denied standing to plaintiffs in Title VII cases where plaintiffs have alleged injury because of third-party discrimination toward a group to which plaintiffs did not belong. *See id.* (citing *Bermudez v. TRC Holdings, Inc.,* 138 F.3d 1176, 1180 (7th Cir.1998); *Childress v. City of Richmond,* 134 F.3d 1205, 1209 (4th Cir.

Accordingly, Plaintiff's hostile work environment claim fails because he has not alleged an environment that was hostile "because of [*Plaintiff's*] sex" or gender.  *Brown*, 257 F.3d at 252.[17]

### D.     Plaintiff's Retaliation Claim

The Court finds that Plaintiff has plausibly alleged facts supporting a *prima facie* case of retaliation under Title VII, and thus his retaliation claim shall proceed.

Section 704(a) of Title VII has an anti-retaliation provision that prohibits an employer from "'discriminat[ing] against any . . . employee[] . . . because [that individual] opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII investigation or proceeding."  *Littlejohn*, 795 F.3d at 315 (quoting 42 U.S.C. S 2000e-3(a)).   Retaliation claims under Title VII are analyzed pursuant to the *McDonnell Douglas* burden-shifting framework.  *Id.*  "To establish a presumption of retaliation at the initial stage of a Title VII litigation," a plaintiff must plausibly allege facts showing "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse

---

1998) (en banc) (Luttig, J., concurring); and *Patee v. Pac. NW Bell Tel.*, 803 F.2d 476, 478 (9th Cir. 1986)).  The *Leibovitz* court did not need to reach the question, because the plaintiff was a woman, and thus was "a member of the protected class that she claims was subjected to discrimination."  *Id.  Krasner* rejected an approach that would have granted standing to a man to assert such a claim.  *See Krasner*, 680 F. Supp. 2d at 515–16 ("The Second Circuit has never endorsed such a position and this Court sees no sound reason to.  Krasner's concern for a woman's right to be free of workplace discrimination, and offense taken upon being surrounded by conduct believed to impinge on that right, admirable as it may be, does not make Krasner himself a victim of gender-based discrimination within the scope of Title VII's protections.").

[17] Given this ruling, the Court need not reach the question of whether Ryer's comments were "sufficiently continuous and concerted in order to be deemed pervasive."  *Littlejohn*, 795 F.3d at 321.  The Court also finds that Plaintiff's claim of unequal pay compared to the female program directors does not give rise to a hostile work environment claim, because even construing Plaintiff's claims about unequal pay liberally, they do not equate to an allegation that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult."  *Id.* at 320–21.

employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Id.* at 315–16 (quoting *Hicks*, 593 F.3d at 164).

### 1. Plaintiff has Exhausted his Retaliation Claim

As a preliminary matter, the Court finds that Plaintiff has adequately exhausted administrative remedies for his retaliation claim. Plaintiff checked the boxes for "retaliation" in both of his NYSDHR complaints. (Dkt. 18-1 at ECF 10–11.) In the first complaint, he alleged retaliation "for filing an HR complaint" and stated that he was alleging retaliation for opposing discrimination based on sex. (Dkt. 18-1 at ECF 11; Dkt. 18-2 at ECF 4.) In the second complaint, filed after he was terminated, he alleged retaliation because he had filed the previous NYSDHR complaint. (Dkt. 18-1 at ECF 11.) Although Defendant argues that the first NYSDHR complaint is "devoid of any details regarding said retaliation claim," (*id.*) the Court finds that these complaints would have given the agency "adequate notice to investigate" Plaintiff's retaliation claim. *Williams*, 458 F.3d at 70. Furthermore, a claim of retaliation that postdates the submission of an EEOC or NYSDHR charge generally is excepted from the requirement that the claim must first have been made in the EEOC or NYSDHR charge. *See Joseph v. Price Costco,* 100 Fed. App'x. 857, 857–58 (2d Cir. 2004) (summary order) (citing *Butts*, 990 F.2d at 1402–03) (explaining that a claim may be considered "reasonably related" to claims asserted in an EEOC complaint if it is a "claim[] of retaliation for filing the EEOC charge"); s*ee also Williams*, 458 F.3d at 70 n.1 (quoting *Butts*, 990 F.2d at 1402–03) (noting that a claim "alleging retaliation by an employer against an employee for filing an EEOC charge" is considered "reasonably related" to a claim filed with the EEOC). Thus to the extent that Defendant argues that Plaintiff's Title VII retaliation claim is barred for failure to exhaust

administrative remedies, the Court disagrees and finds that Plaintiff has exhausted administrative remedies.

2.  Plaintiff Has Stated a Claim for Retaliation

Turning to the first element of Plaintiff's retaliation claim, the Court finds that Plaintiff has adequately alleged that he engaged in protected activity.  Even if a plaintiff has not personally experienced discrimination, if he complains about discrimination against someone else and is retaliated against, he may have a viable retaliation claim under Title VII.  *See Vega*, 801 F.3d at 91 ("Retaliation occurs when an employer takes action against an employee not because of his ethnicity, but because he engaged in protected activity—complaining about or otherwise opposing discrimination.");  *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 285 (2d Cir. 1998) ("Even if an employee is not the victim of prohibited discrimination, Title VII protects her against retaliation for protesting against such discrimination.");  *Krasner*, 680 F. Supp. 2d at 519 (articulating the same standard); *Smith v. AVSC Intern., Inc.* 148 F. Supp. 2d 302, 311 (S.D.N.Y. 2001) (explaining that a claim of discriminatory retaliation "may succeed on a theory that the defendants terminated him for reporting discrimination against *others*, because the act of reporting is statutorily protected") (emphasis added); *see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) ("The substantive [anti-discrimination provision of Title VII] seeks to prevent injury to individuals based on who they are, *i.e.*, their status" [while] "[t]he antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e*, their conduct.")  In *Littlejohn*, the Second Circuit held that "if an employee . . . actively 'support[s]' other employees in asserting their Title VII rights or personally 'complain[s]' or is 'critical' about the 'discriminatory employment practices' of her employer, that employee has engaged in a protected activity under

§ 704(a) . . . ." *Littlejohn*, 795 F.3d at 318. *See generally Deravin*, 335 F.3d at 203–04 (stating that "the explicit language of § 704(a)'s participation clause is expansive and seemingly contains no limitations"). Even informal protests of discriminatory employment practices, including complaints to management, count as protected activity under Title VII. *See Littlejohn*, 795 F.3d at 317–18 (explaining this standard); *La Grande v. Decrescente Distrib. Co.*, 370 Fed. App'x 206, 212 (2d Cir. 2010) (vacating dismissal of a plaintiff's retaliation claim where the protected activity consisted of complaints to management of sexual harassment of a female customer and a co-worker's racial remarks).

Here, Plaintiff's complaints about Ryer's anti-women and anti-white comments to NHSJ's management, including his initial complaint to Miller while she was NHSJ's interim Executive Director, qualify as protected activity, as does his filing of the NYSDHR Complaint. (Dkt. 18-2 at ECF 10 (Plaintiff lists nine dates on which he "submitted . . . complaints to NHSJ . . . about adverse employment action in the form of discrimination, sexual stereotyping, bullying, harassment, and retaliation," ranging from 7/24/2014 to 8/18/2015).) In addition, Plaintiff's complaints about his own gender-based discriminatory treatment with respect to pay also constitutes protected activity. Drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged the first element of his *prima facie* retaliation claim.

Regarding the second element of Plaintiff's retaliation claim, Defendant does not explicitly deny that it knew about Plaintiff's complaint to Miller or about his NYSDHR filing, and does not make an argument that Plaintiff's retaliation claim should be defeated on the basis that Defendant lacked knowledge of Plaintiff's protected activity. Indeed, the evidence shows, at a minimum, that Defendant received NYSDHR's findings on Plaintiff's first complaint to that

agency in August 2015. (Dkt. 18-2 at ECF 14.) The Court thus finds that Plaintiff has adequately alleged the second element of his retaliation claim at this stage.

The Court also finds that Plaintiff has plausibly alleged that Defendant took an adverse employment action against him. An adverse employment action is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57). This definition "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII" and "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* Courts in the Second Circuit have taken a "generous" view of retaliatory acts at the motion to dismiss stage. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (noting "it is appropriate to construe Title VII's prohibition on retaliation generously"). Plaintiff has listed several adverse actions that Defendant took against him, including failure to promote and/or increase his salary, retaliatory write-ups for infractions that had not happened, defaming Plaintiff's work ethic and character in his employment evaluation, denying Plaintiff travel payments for work-related travel, and termination of employment on September 30, 2015. (Am. Compl. at ECF 9–10.) The Court finds that, given the "generous" construction of adverse employment actions, most, if not all, of these actions could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 87, 90–91 (finding that a negative performance evaluation can constitute an adverse employment action); *Cerni v. J.P. Morgan Securities LLC*, 15-CV-5389, 2016 WL 5805300, at *3 (S.D.N.Y. Sept. 20, 2016) (observing that, under the "generous standard" for what constitutes an adverse employment action for a retaliation claim, "[t]he Second Circuit has . . . held that . . . a negative performance review can constitute an adverse

action for purposes of a retaliation claim"); *Ward v. Shaddock*, 14-CV-7660, 2016 WL 4371752, at *12 (S.D.N.Y. Aug. 11, 2016) ("The Court cannot say at this early stage that the identified conduct—namely, reassignment to arduous and dirty tasks, filing of false disciplinary reports, deprivation of necessary safety equipment, and reduction of supervisory responsibility—is insufficient as a matter of law to be materially adverse."); *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, 2013 WL 6061984, at *6 (E.D.N.Y. Nov. 15, 2013) (finding that a disproportionately increased workload, assignment to unpleasant and potentially dangerous tasks, denial of a personal day to take plaintiff's pregnant wife to a doctor's visit, and the receipt of an unsigned paycheck, evidenced a pattern that could qualify as adverse employment actions for a retaliation claim).

The Court also finds that Plaintiff has presented sufficient evidence of causation to survive a motion to dismiss. As to the causation element, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90–91. "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.* at 90. Defendant's primary challenge to Plaintiff's retaliation claim is that Plaintiff is unable to establish causation because his NYSDHR complaint was made in February 2015 and he was terminated in September 2015. Defendant asserts that this seven-month gap is too long to support an inference of causation. (Dkt. 18-1 at ECF 20.) The Court finds that this argument oversimplifies Plaintiff's claim and ignores the series of retaliatory acts he alleges.

While Plaintiff has not provided dates for most of the other adverse actions he alleges, a liberal reading of the Amended Complaint and Plaintiff's opposition brief show that adverse actions plausibly occurred much closer in time to Plaintiff's protected activity than Defendant

asserts.[18]  Plaintiff alleged that he began complaining to management about Ryer's anti-women comments in May 2014.  (Am. Compl. at ECF 8.)  Plaintiff's first NYSDHR complaint was filed in February or March 2015.  (Dkt. 5 at ECF 7; Dkt. 18-1 at ECF 8)  After Plaintiff made internal complaints and filed his NYSDHR complaint, Defendant began giving Plaintiff "unwarranted wright-ups." (Dkt. 18-2 at ECF 10.)  Plaintiff also alleges that he submitted complaints to NHSJ on August 17, 2015 and on August 18, 2015 "about adverse employment action in the form of discrimination, sexual stereotyping, bullying, harassment, and retaliation."  (*Id.*)  He alleges that Defendant received the NYSDHR finding (from the February or March 2015 complaint) on or about August 24, 2015, and called Plaintiff's department to a meeting to let them know that they would be terminated the following week.  (Dkt. 18-2 at ECF 14.)  Plaintiff was terminated on September 30, 2015.  (Am. Compl. at ECF 7.)  The other adverse employment actions alleged by Plaintiff, including failure to promote, failure to raise his pay, unwarranted write-ups, defamation, and denial of travel payments,  (Dkt. 18-2 at 10,) presumably occurred prior to Plaintiff's termination.

---

[18] Although courts have dismissed retaliation claims that do not provide dates as failing to allege causation, such cases generally involve represented plaintiffs rather than *pro se* parties. *See, e.g.*, *Ward*, 2016 WL 4371752 at *13 (dismissing for failure to include dates); *Henry*, 18 F. Supp. 3d at 412 (dismissing because the complaint "fail[ed] to state with even a modicum of specificity when the relevant events occurred"); *Winston v. City of N.Y.*, No. 12-CV-0395, 2013 WL 4516097, at *4 (E.D.N.Y. Aug. 23, 2013) (holding that an allegation that plaintiff experienced an adverse action "shortly []after" protected activity was a "conclusory allegation" that was "too vague in nature and non-specific as to time ... to serve as a basis for her retaliation claims.") (internal quotation marks omitted).  Here, because Plaintiff is *pro se*, and has provided some dates that tend to support an inference of causation, the Court does not find the lack of precise dates to be fatal to Plaintiff's retaliation claim at this stage, especially given that Plaintiff allegedly made nine complaints to NHSJ's management between July 2014 and August 2015. (Dkt.18-2 at ECF 13.)

Defendant is correct that time spans even shorter than seven months have frequently been held too attenuated to support an inference of causation. *See, e.g.*, *Williams v. City of N.Y.*, 11-CV-9679, 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged."); *Lopez v. City of N.Y.*, 14-CV-3285, 2016 WL 3129184, at *9 (E.D.N.Y. June 2, 2016) (stating that "courts in this circuit have consistently held that a time period of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation"). However, a solicitous reading of Plaintiff's submissions indicates that Defendant began to "write [Plaintiff] up" shortly after he began complaining about the discriminatory statements in May 2014, and then took several other adverse actions against him over the course of the ensuing year and a half, leading up to his termination in September, 2015. (Am. Compl. at ECF 8–10.) *See Vega*, 801 F.3d at 80 (finding, in the context of holding that claims were not untimely, that "[w]hile the Complaint is not precise in terms of dates, it seems to suggest an ongoing practice"); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (noting that the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," and has noted that it has held that "five months is not too long to find the causal relationship"). Furthermore, crediting Plaintiff's allegation in his opposition brief that he submitted complaints to Defendant on August 17 and 18, 2015, and that Defendant did not receive the NYSDHR finding until August 24, 2015, Plaintiff's termination five to six weeks later could certainly sustain a finding of causation. *See Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 324 (N.D.N.Y. 2013) ("In general, a temporal gap of less than two months is sufficient to give rise to an inference of discrimination."); *Mazurkiewicz v. N.Y.C. Health &*

*Hosps. Corp.*, 09-CV-5962, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010) (explaining that "[t]he Second Circuit often utilizes a two month window to determine whether the temporal connection between the protected activity and alleged retaliation is sufficiently close or too attenuated" (quoting *Milne v. Navigant Consulting*, 08-CV-8964, 2009 WL 4437412, at *8 (S.D.N.Y. Nov. 30, 2009)). Therefore, the Court allows Plaintiff's retaliation to proceed.[19]

### 3. Plaintiff's Retaliation Claim is Not Untimely

Finally, Defendant argues that Plaintiff's retaliation claim is untimely because to the extent that Plaintiff complained about gender-based remarks made prior to May 6, 2014, he only had 300 days, or until March 2, 2015 to file a charge with the NYSDHR, and thus his March 17, 2015 NYSDHR Complaint was untimely.[20] (Dkt. 18-1 at ECF 20–21.) While Defendant may be able to show, with the benefit of discovery, that Plaintiff's claim is untimely, the Court refuses to make such a finding at this stage. First, there is a dispute about the date of Plaintiff's initial NYSDHR and EEOC filing—Plaintiff alleges that he filed it on February 26, 2015; Defendant asserts that it was filed on March 17, 2015. (Compare Am. Compl. at ECF 4 with 18-1 at ECF 8.) Because Defendant has not submitted the NYSDHR documents and because the EEOC letter attached to Plaintiff's complaint does not clarify the date the complaints were submitted (Am. Compl. at ECF 6,) the Court cannot conclude that Plaintiff failed to file the complaint prior to

---

[19] The parties should be able to clarify through discovery the nature and timing of Plaintiff's complaints to NHSJ's management.

[20] Plaintiffs are ordinarily required to file a charge with the EEOC within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). If the employment practice took place in a state with its own anti-discrimination laws and an agency to enforce those laws, as here, an employee who initially files a grievance with that agency has 300 days to file a charge with the EEOC. *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996). "New York has antidiscrimination laws and antidiscrimination agencies at the state and local level; the 300-day limit therefore applies to plaintiffs who initially file a grievance with a state or local agency." *Joseph v. Brooklyn Developmental Disabilities Servs. Office*, 12-CV-4402, 2013 WL 151197, at *4 (E.D.N.Y. Jan. 15, 2013).

March 2, 2015. Second, Plaintiff alleges in his Amended Complaint that Ryer's anti-women comments "started in May of 2014 with the last rant being on 3/13/2015," and that Plaintiff's "first complaint [to management] [was] approximately May 6, 2014." (Am. Compl. at ECF 8.) In his opposition brief, Plaintiff alleges that he submitted complaints to Defendant on 7/24/2014, 11/10/2014, 11/24/2014, 12/19/2014, 12/24/2014, 1/6/2015, and 2/5/2015, prior to officially complaining to the NYSDHR and EEOC (as well as more complaints thereafter). (Dkt. 18-2 at ECF 10.) Therefore, even if Plaintiff's first NYSDHR complaint was not timely as to comments Plaintiff's supervisor made prior to May, 2014, Plaintiff has adequately alleged that he heard anti-women comments for many months thereafter, and his February or March 2015 NYSDHR Complaint could have been based on those later comments. Furthermore, as noted, Plaintiff has alleged that he continued to complain about the gender-based discrimination he observed in the months following May 2014, and continued to experience adverse actions in response to those complaints. At this stage, therefore, Defendant has not demonstrated that the retaliation claim must be dismissed on the basis of untimeliness.[21]

The Court therefore allows Plaintiff's Title VII retaliation claim to proceed.

## II.     PLAINTIFF'S EQUAL PAY ACT (EPA) CLAIM

The Court also finds that under the liberal standard for *pro se* plaintiffs, Plaintiff has adequately alleged an EPA claim.

To establish a prima facie EPA case, a plaintiff must show that "(i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar

---

[21] Although Defendant does not explicitly argue that Plaintiff's gender-based disparate treatment claim is untimely, the Court notes that there would not be a timeliness problem with this claim, as Plaintiff's denial of equal pay on the basis of his gender appeared to be an ongoing problem up until the time of his complaints, and ultimately, termination.

working conditions." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999); *Crawley*, 2016 WL 6993777, at *8 (same). A plaintiff "need not show that the two jobs are identical" but must prove a "substantial equality of skills, effort, responsibility and working conditions between the two jobs." *Francoeur v. Corroon & Black Co.*, 552 F. Supp. 403, 407 (S.D.N.Y. 1982).

To survive a motion to dismiss, an EPA plaintiff is not required to "allege facts establishing each element of a prima facie case." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014). A plaintiff, however, must "at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Id.* (internal alterations omitted).

Defendant argues that Plaintiff's EPA claim must be dismissed because Plaintiff, a youth counselor, "fails to compare himself . . . to any female or other **youth counselors**", "**fails to list or give any examples** of the alleged extra duties which [were] those of a director . . . of which he allegedly performed" and "is devoid of any comparison between his alleged duties and responsibilities compared to those of a director, let alone a difference between the duties and responsibilities of female directors versus male directors or pay differentials." (Dkt. 18-1 at ECF 13–14 (emphases in original).) Because the Court considers additional facts in Plaintiff's opposition papers, *see supra* note 2, the Court disagrees that Plaintiff has failed to plausibly plead an EPA claim.

As noted, Plaintiff alleges that Defendant paid "different/higher wages to women directors/managers" even though he was "a male that was performing director/management work and making significantly less." (Dkt. 18-2 at ECF 5.) He has provided names of female directors and/or managers who "performed duties equal to [his] [but] were paid more." (*Id.*) He alleged that in May 2014, Plaintiff took over the "responsibility of directing the [youth]

program," (*id.* at 5–6,) and that on July 24, 2014, Mickens referred to Plaintiff as doing [the director's] job and all the work of the department". (*Id.* at 6.) Plaintiff also alleged that Miller thanked him for "carrying the department and acknowledged all the work [he] did as a director to help fulfill the grant." (*Id.*) Finally, Plaintiff identified several positions at NHSJ, some of which were director positions, for which he stated he had performed all of the duties during his employment at NHSJ. (*Id.* at 7–8.)

Plaintiff alleged in the Complaint that his youth counselor salary was $45,000, and remained at that level, despite the fact that he "continued to do the work of a Director and others". (Am. Compl. at ECF 8.) He also alleged that "NHSJ management promised Plaintiff that he would be promoted to Director after the director in place was let go, and promised Plaintiff a salary of approximately $65,000." (*Id.*) Further, he alleged that "[o]ther directors" at NHSJ, all of whom were women, received a salary of over $60,000. (Am. Compl. at ECF 10–11.)

Construing the Complaint liberally as the Court must, it finds that Plaintiff has sufficiently alleged an EPA claim based on a comparison of Plaintiff to the female directors/managers who were paid approximately $15,000 more than Plaintiff. The fact that Plaintiff did not share the title of the directors/managers to whom he compares himself does not, in itself, defeat his claim. *See Chepak v. Metro. Hosp.*, 555 Fed. App'x 74, 76 (2d Cir. 2014) (summary order) (finding that, "[i]n light of [plaintiff's] *pro se* status," plaintiff's allegations that "she was given a different title, but required to do the same job for less pay, as her male predecessors" to be "sufficient to survive a motion to dismiss"); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 471 (S.D.N.Y. 2013) (explaining that "the fact that comparators of the opposite sex had different job titles does not bar an EPA claim" and finding that plaintiffs had stated a

claim because they had "allege[d] that they performed substantially the same job for less pay than [their male] comparators"); *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 569 (S.D.N.Y. 2012) ("In determining whether two positions are substantially equal in skill, superficial comparisons based on job title or code are insufficient") (internal quotation omitted); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) (explaining that "the standard under the Equal Pay Act is job content and not job title or description").

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's EPA claim, which will proceed to discovery.[22]

## III.    PLAINTIFF'S STATE LAW BREACH OF CONTRACT CLAIM

Plaintiff has also alleged that Defendant breached an oral promise to promote him, although he does not claim that he was denied the promotion because of race or gender discrimination.   (Am. Compl. at ECF 8–9.)[23]   Given that Plaintiff's Title VII gender-based disparate treatment and retaliation claims and his EPA claims survive, and that Defendant did not address this breach of contract claim in its motion to dismiss, the Court allows this claim to

---

[22] Although the Court questions whether Plaintiff ultimately will be able to sustain his burden of proving his EPA claim, it finds that he is "entitled to offer evidence to support his claims." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (explaining that, at the motion-to-dismiss stage, "the appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims" (alteration and internal quotation marks omitted)).

[23] As previously discussed, based on Plaintiff's statements during the March 24, 2016 pre-motion conference, the Court has construed the Amended Complaint as asserting a state law claim for breach of contract. *See supra* at n.1.

survive at this stage, pursuant to the Court's discretion to exercise supplemental jurisdiction over a related state law claim. 28 U.S.C. § 1367(a).[24]

## IV.    SERVICE OF PROCESS DEFICIENCIES

Defendant also argues that this action should be dismissed in its entirety based on defective service of the Amended Complaint. The Court declines to do so.

Rule 4 is "to be construed liberally 'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'" *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)). When an *in forma pauperis* ("*IFP*") plaintiff relies on the U.S. Marshals Service to serve her summons and complaint pursuant to FRCP 4(c)(3), "the court is responsible for the failure to serve, [and therefore] good cause exists under Rule 4(m) for an extension of time to complete service." *Stevens v. Landes*, 13-CV-643S, 2016 WL 7210072, at *2 (W.D.N.Y. Dec. 13, 2016) (citing *McCalmann v. Partners in Care*, 01-CV-5844, 2002 WL 856465, at *1 (S.D.N.Y. April 25, 2002)); *see Romandette*, 807 F.2d at 311 (finding that an incarcerated *pro se* litigant proceeding *IFP* was "entitled to rely on service by the U.S. Marshals"); *see also Jaiyeola v. Carrier Corp.*, 73 Fed. App'x 492, 494 (2d Cir. 2003) (summary order) (applying the rationale of *Romandette* to a non-incarcerated *pro se* plaintiff); *Armstrong v. Sears*, 33 F.3d 182, 188 (2d Cir. 1994) (explaining that 28 U.S.C. § 1915(c) and FRCP 4(c)(2) "obligated the Service to serve the summons and complaint upon [the defendants] for [plaintiff]," and that after the plaintiff had

---

[24] Although Plaintiff's breach of contract claim does not allege racial or gender discrimination, it nonetheless emanates from the same course of conduct and facts as Plaintiff's Title VII and EPA claims, thereby making it appropriate for the Court to exercise supplemental jurisdiction over it. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 613 F. Supp. 2d 437, 440-41 (S.D.N.Y. 2009) (explaining that under 28 U.S.C. § 1367(a), "federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to 'form part of the same case or controversy under Article III . . . .'") (internal quotation omitted).

signed and returned the USM-285 forms to the Marshals requesting personal service, "it was the Service's obligation to effect service pursuant to Rule 4(e)" and they "did not have the option to require fresh, superfluous instructions from [the plaintiff]").

Although the Second Circuit has since explained in *Meilleur v. Strong* that "[i]f a plaintiff proceeding *IFP* chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so," *Meilleur* did not involve a situation in which the defendants clearly received actual notice. 682 F.3d 56, 62–63 (2d Cir. 2012). Furthermore, the *Meilleur* court expressly explained that district courts have a "wide range of discretion" regarding service of process, and that the panel in *Meilleur* "might well have exercised discretion differently" than the district court, which had dismissed plaintiff's claim for insufficient service. *Id.* at 63.

Here, the magistrate judge assigned to this matter, the Honorable Robert M. Levy, ordered the U.S. Marshals Service on December 16, 2015 to serve the summons, Complaint, and Amended Complaint on Defendant. (Dkt. 6.) In its request for an extension of time to answer the Amended Complaint, Defendant informed the Court that it had been served by mail on or about December 28, 2015. (Dkt. 10.) Defendant's extension request was granted on January 29, 2016. (Dkt. Entry 1/29/16.) Defendant did not raise the issue of improper service in either its PMC letter (Dkt. 12,) or at the pre-motion conference itself. In light of Defendant's undisputed actual notice, the briefness of the service delay (which makes *pro se* Plaintiff's failure to seek an extension of time for service, as required by *Meilleur*, more excusable), and Defendant's failure

to raise the service issue until the actual filing of its motion to dismiss, the Court, in its discretion, declines to dismiss this action based on improper service.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's Title VII race-based disparate treatment and hostile work environment claims are dismissed for failure to state a claim. Plaintiff's Title VII gender-based disparate treatment and retaliation claims, his Equal Pay Act claim, and his state law breach of contract claim shall all proceed.

SO ORDERED.


   /s Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: Brooklyn, New York
      March 16, 2017